## HOBART *vs.* HAGGET.

However the law may be in regard to acts that are entirely *involuntary*, yet a
trespass cannot be justified on the ground of *mistake* merely.

A. bought of *B. an ox*, paying therefor $25,50, and was directed to go and take
him from *B*'s enclosure. A. took an ox that he supposed he had bought, but
which, it appeared, *B.* did not sell. *Held*, that *trespass* would lie for such
taking.

The jury having returned a verdict for the plaintiff, for the value of the ox
taken, viz. $37, "*including the sum of* $25,50, *already paid by the defendant,*"
the Court directed the verdict to be put in form, and amended by omitting
that part relating to the $25,50.

TRESPASS, for the alleged taking and converting to his own
use by the defendant, an ox, the property of the plaintiff. The
general issue was pleaded and joined.

"The defendant proved, that he met the plaintiff in the street,
and paid him $25,50 for an ox, which the plaintiff directed him
to go and take. That, he went and took an ox out of the plain-
tiff's inclosure, supposing it to be the one he had so purchased;
and produced much other evidence, tending to show, that the ox
taken, was the one he had bargained for.

The plaintiff introduced evidence to show, that there had been
a mistake and misunderstanding between himself and the defend-

ant; and that the ox, which he supposed he had sold, was another ox of much less value; and that he never supposed the defendant considered himself as having purchased the ox which he had taken, until he, the plaintiff, returned home and found the ox in question had been taken instead of the other."

*Whitman C. J.*, who tried the cause in the Common Pleas, instructed the jury, that, if they were satisfied there had been an innocent mistake between the parties, and that the defendant had supposed he had purchased the ox in question, when in fact, the plaintiff supposed he was not selling that ox, but another, they would find for the plaintiff.

The jury, thereupon, returned their verdict in the following form, viz: "The jury find that the defendant did commit the "trespass alleged against him, and assess damages in the sum of "thirty-seven dollars, including the sum of twenty-five dollars "and fifty cents, already paid by the defendant." Which, the Court, though objected to by the defendant, directed to be altered so as to read as follows: "The jury find that the defendant is "guilty in manner and form as the plaintiff has alleged against "him, and assess damages in the sum of thirty-seven dollars:" which was affirmed by the jury in the usual manner.

To this ruling and direction of the Court, the defendant took exceptions, and thereupon brought the case up to this Court.

*Daveis*, for the defendant, contended that *trespass* would not lie upon these facts. This remedy implies a degree of *wrong*. And if the maxim *damnum absque injuriâ* will apply any where, it is in such a case as this.

The remedy should have been pursued in *contract*, or perhaps in *trover;* and there should have been a *previous demand* upon the defendant. *Beckwith* v. *Shawdike*, 4 *Burr.* 2092.

Where the act complained of is involuntary and without fault, trespass will not lie. 2 *Esp. N. P.* 60; *Esp. Dig. tit. Trespass; Cole* v. *Barnes*, 8 *T. Rep.* 188; *Leed* v. *Bray*, 3 *East*, 593; *Cole* v. *Fisher*, 11 *Mass.* 137; *Brown* v. *Gay*, 3 *Greenl.* 136; *Ross* v. *Gould*, 5 *Greenl.* 212.

2. The counsel further contended, that the verdict was wrongfully amended. It was just and equitable that the $25,50 paid by the defendant should have been deducted from the damages.

The power of the Court to the extent claimed is questionable. *Little* v. *Larrabee,* 2 *Greenl.* 37.

*Fessenden & Deblois,* were of counsel for the plaintiff, and cited in their argument the following authorities: *Gibbs* v. *Chase,* 10 *Mass.* 125; *Bolster* v. *Cummings,* 6 *Greenl.* 85; *Jackson* v. *Williams,* 2 *Term Rep.* 281; *Coffin* v. *Jones,* 11 *Pick.* 48; *Clark* v. *Lamb,* 8 *Pick.* 415; *Higginson* v. *York,* 5 *Mass.* 341.

PARRIS J. — The ox taken by the defendant was the property of the plaintiff, and although the defendant attempted to prove that he purchased *that* ox, and consequently had a right to take it, the attempt wholly failed. He may have considered himself as the purchaser, but unless the plaintiff assented to it, no property passed. The assent of both minds was necessary to make the contract. The court below charged the jury that if they were satisfied there had been an innocent mistake between the parties and that the defendant had supposed he had purchased the ox in question when in fact the plaintiff supposed he was not selling that ox but another, that they would find for the plaintiff. The jury having found for the plaintiff have virtually found that he did not sell the ox in controversy, and the question is raised whether the defendant is liable in trespass for having taken it by mistake. It is contended that where the act complained of is involuntary and without fault trespass will not lie, and sundry authorities have been referred to in support of that position.

But the act complained of in this case was not involuntary. The taking the plaintiff's ox was the deliberate and voluntary act of the defendant. He might not have intended to commit a trespass in so doing. Neither does the officer, when on a precept against A. he takes by mistake the property of B. intend to commit a trespass; nor does he intend to become a trespasser, who, believing that he is cutting timber on his own land, by mistaking the line of division cuts on his neighbor's land; and yet, in both cases, the law would hold them as trespassers. The case of *Higginson* v. *York,* 5 *Mass.* 341, was still stronger than either of those above supposed. In that case one *Kenniston* hired the defendant to take a cargo of wood from *Burntcoat Island* to *Boston.*

*Kenniston* went with the defendant to the island, where the latter took the wood on board his vessel and transported it to *Boston,* and accounted for it to *Kenniston.* It turned out on trial, that one *Phinney* had cut this wood on the plaintiff's land without right or authority, and sold it to *Kenniston.* *York,* the defendant, was held liable to the plaintiff for the value of the wood in an action of trespass, although it was argued that he was ignorant of the original trespass committed by *Phinney.* A mistake will not excuse a trespass. Though the injury has proceeded from mistake the action lies, for there is some fault from the neglect and want of proper care, and it must have been done voluntarily. *Basely* v. *Clarkson,* 3 *Lev.* 37. Nor is the intent or design of the wrongdoer the criterion as to the form of remedy, for there are many cases in the books where the injury being direct and immediate, trespass has been holden to lie though the injury were not intentional, as in *Guille* v. *Swan,* 19 *Johns.* 381; where the defendant ascended in a balloon which descended into the plaintiff's garden ; and the defendant being entangled and in a perilous situation, called for help and a crowd of people broke through the fences into the plaintiff's garden, and beat and trod down his vegetables, the defendant was held answerable in trespass for all the damage done to the garden. In this case *Spencer C. J.* said, " The *intent* with which an act is done, is, by no means, the test of the liability of a party to an action of trespass. If the act cause the immediate injury, whether it was intentional or unintentional, trespass is the proper action to redress the wrong." See also 1 *Pothier, art.* 1. *sec.* 1 ; 1 *Sumner,* 219, 307.

From the exceptions, it appears that the defendant paid the plaintiff twenty-five dollars and fifty cents towards *an* ox, which the defendant contended was the ox in controversy, but which the plaintiff contended was for another ox.

The jury substantially found, that the payment was not on account of this ox, as this was never sold. That amount was so much money of the defendant's in the plaintiff's hands, and which could be reclaimed in a proper action, provided it should appear that there had been no sale of either ox or by reason of the mistake. But it could not be offset against a trespass. The jury had no authority to deduct that sum from the injury resulting

Hobart *v.* Hagget.

from the trespass. Their business was to inquire whether the ox in controversy was the plaintiff's property, whether he was so taken by the defendant as, under the instructions from the Court, would amount to a trespass, and the damage arising from such trespass.

They had no right by law to make offsets or deductions in the nature of an offset, and the Judge very properly directed all that which related to the payment of the twenty-five dollars and fifty cents to be stricken from their verdict.

It was immaterial whether this direction was previous to their going into consultation, or on their return into court. It was an instruction according to law, proper for the Judge to give, and by which the jury in the correct discharge of their duty would have been governed.

Probably it was not a subject on which the jury were originally charged, having been omitted under a belief that in estimating damages they would not take it into consideration. But when, on their return into Court, having found every material fact, and properly certified such finding, the Judge perceived, appended to their verdict, a further irrelevant finding, he very properly directed that to be stricken out, which having been done, the verdict was affirmed.

Clearly there could be nothing improper in this, as the correct judgment to be rendered on the verdict as originally returned would have been for the full sum of thirty-seven dollars, without any regard to the deduction. Courts have repeatedly gone much farther than this in amending verdicts even after a discharge of the jury. This correction was made in the presence of the jury and with their consent, as they subsequently affirmed it in its amended form.

The exceptions are overruled and there must be

*Judgment on the verdict.*