STATE OF MAINE *vs.* JESSE S. SMITH and others.

Penobscot.   Opinion May 25, 1886.

*Trespass.   Persons authorizing.   Public lands.   Permits.*

'Those who authorize the commission of a trespass are equally responsible as those by whose acts the trespass is committed.

'The assessors of a plantation were authorized by the land agent to guard certain lots, reserved for public uses, against trespassers.   They had no right nor authority to permit or sell timber or other property from the lots. After exploring the lots, supposing they had such authority, they gave permits in writing to certain parties to take off the hemlock bark and timber from the lots.   The permits were assigned to other parties who subsequently peeled the bark, and cut and carried away a portion of the timber, for which acts an action of trespass was brought against the assessors, and they were held liable.

ON REPORT.

Trespass against the assessors of Silver Ridge Plantation for timber and bark cut from lots reserved for public uses in that plantation under permits given by them in 1879.   The writ was dated November 8, 1883.   The opinion states the material facts.

*Charles Hamlin* and *Jasper Hutchings*, for the plaintiff, cited: R. S., c. 5, § 10; 2 Greenl. Ev. § § 613, 615; *Wall* v. *Osborn*, 12 Wend. 39; *Guille* v. *Swan*, 19 Johns. 382; *Scott* v. *Shepard*, 2 Black. R. 892; *Leame* v. *Bray*, 3 East, 595; *Morgan* v. *Varick*, 8 Wend. 594; 7 Cowan, 613; 10 Mass. 125; *Libby* v. *Soule*, 13 Maine, 310; *Cram* v. *Thissell*, 35 Maine, 88; *Jones* v. *Lowell*, 35 Maine, 541; *Woodbridge* v. *Conner*, 49 Maine, 353; *Lincoln* v. *Worcester*, 8 Cush. 59.

*A. W. Paine*, for the defendants.

At most the defendants have signed a document, having no force in law purporting to give a license, merely a permission, to do an act which upon its face they had no right to do or sign, and somebody has unwittingly taken advantage of the license, to the injury of a third person. Can such third person come into court and legally demand for such illegal act?

At most the permit was not a *causa causans*. It was of that class which flows not naturally from the acts of the defendants so as to be within the *proxima causa* class which the court will respect. See cases collected by Broom's Legal Maxims, 205–7, 215, 227.

The relation of cause and effect can not be made out by including illegal acts of third persons. Hilliard on Torts, 92, § 9. *Non constat*, by any means, that because one gives another permission to do a thing that *ergo* he will do it, to the injury of another. The case at bar is strikingly of the same class and character as those used by Greenleaf, in illustration of the rule now repeated or alluded to. 2 Greenl. on Ev. § 256.

There must be either the relation of master and servant or principal and agent in order to create such liability, or some positive direction such as made by the acting party, an agent or servant in effect. *Bacheller* v. *Pinkham*, 68 Maine, 255. *Eaton* v. *E. & N. A. R. R. Co.* 59 Maine, 520, is full of authority to this point, " unless the relation of master and servant exists the party contracting is not responsible for the negligent or tortious acts of the person, with whom the contract is made."· The subsequent case of *Tibbetts* v. *Knox & L. R. R.* 62 Maine,. 437, is to the same effect. If the employment of one to do a,

particular work does not render the employer liable for the injury in such case, how can the simple permitter in a case like this be held responsible. *Doughty* v. *P. L. D. Co.* 76 Maine, 143, and cases cited.

The master in such cases is liable for the servant in the course of his emplyment, but only to the extent of his employment. Brown on Dom. Rel. 136; *Kimball* v. *Cushman*, 103 Mass. 194; *Wood* v. *Cobb*, 13 Allen, 58.

The relation of a contractor however does not raise any such liability. So that our case would not come within the principle. Brown on Dom. Rel. 136; *McCarthy* v. *2nd Parish*, 71 Maine, 318; *King* v. *N. Y. C. R.* 66 N. Y. 181.

The relation of permitter and permittee is of the same character as lessor and lessee. But it is well established that a lessor is not liable for the tortious acts of his lessee. This was fully settled in the case of *Dwinel* v. *Veazie*, 44 Maine, 176; *Rich* v. *Basterfield*, 56 E. C. L. 783; *Earle* v. *Hall*, 2 Met. 353; *Hilliard* v. *Richardson*, 3 Gray, 349.

Another good illustration is found in the case of one who has conveyed land by deed to another, he having no title but supposing at the time that he had. In such case the actual owner has no claim for damages against the grantor for trespass committed by grantee under this deed. *Sullivan* v. *Davis*, 29 Kan. 28; *Ward* v. *Cape R. Iron Co.* 50 Mich. 522.

Again, the case of an officer making an attachment by general orders of plaintiff against property of a third person is another good illustration of our position. If under such general orders he makes such attachment, the plaintiff is not liable, however he might be if he indemnified the officer for attaching the specific property named. *Murray* v. *Lovejoy*, 2 Clifford, 191; *Lovejoy* v. *Murray*, 3 Wall. 1; *Herring* v. *Hoppock*, 15 N. Y. 409; *Barker* v. *Stetson*, 7 Gray, 53; *Elliott* v. *Hayden*, 104 Mass. 180; *Knight* v. *Nelson*, 117 Mass. 458.

Again "the mere intent of the defendant in trespass is not material if his conduct was not actionable." *Estey* v. *Smith*, 45 Mich. 402.

In the case of *Robinson* v. *Vaughton*, 8 C. & P. 252; 34 E.

C. L. 376, we have a case directly in point, where ALDERSON, B., says: "If I give a man leave to go on a field over which I have no right and he goes, that will not make me a trespasser. But if I desire him to go and do it, and he does it, that is a doing of it by my authority, which is quite a different thing and I should be liable."

The distinction drawn in *Nowell* v. *Wright*, 3 Allen, 166, between the classes of public officers that are liable and those that are not, very clearly places our case on the non-liable side. *White* v. *Phillipston*, 10 Met. 108; *Williams* v. *Adams*, 3 Allen, 171; *Spear* v. *Cummings*, 23 Pick. 224; *Keenan* v. *Southworth*, 110 Mass. 474.

FOSTER, J. The defendants were authorized by the land agent to guard certain lots reserved for public uses in Silver Ridge Plantation against trespassers. They had no right or authority to permit or sell timber or other property from these public lots. As assessors of that plantation in 1879, supposing they had such right, after exploring the lots, they permitted all the hemlock bark on one of said lots to one St. John for one hundred dollars. The permittee assigned his contract to Shaw Brothers, who, during that and the three following years, cut down the hemlock and carried away the bark, leaving the trees.

Two weeks after the first permit the defendants by another writing signed by them, permitted all the growth on these public lots, subject to the contract assigned to Shaws, to Jesse S. Smith, one of their own number, for five hundred dollars, but which was never paid. Smith thereafter assigned his contract to one Johnson who cut and carried away, during the years named spruce and cedar timber and removed the hemlock trees left by the Shaws. In all the lumbering operations upon the lots Smith acted as scaler.

For the trespasses committed by the Shaws and Johnson, the plaintiff claims to hold the defendants personally liable; and the real question at issue is whether they are liable or not. We are satisfied that they are liable. This action is for trespass to the real estate, with a count *de bonis* for the timber and bark

carried away, under R. S., c. 5, § 10, which permits suits in favor of the state to be brought in any county. It is undisputed that the title to the lots in question is in the plaintiff, as well as the possession thereof through the land agent who, by virtue of § 15 of the same chapter, " shall have the care of the reserved lands in all townships or tracts until they are incorporated and the fee becomes vested in the town."

The defendants not only entered upon and explored the lands, but they authorized the cutting and removal of the timber and bark. Whatever may have been their intention is immaterial in this suit. If what they did in authorizing others to enter upon and remove the timber and bark from the lots naturally and ordinarily produced the acts complained of, which constitute the alleged trespasses, then they are liable in trespass for those acts. *Sutton* v. *Clark*, 6 Taun. 29 ; 1 Waterman on Tres.' § 62. The principle upon which one man is held liable for the acts of others is thus laid down in *Guille* v. *Swan*, 19 John, 382, where the court say : " To render one man liable in trespass for the acts of others, it must appear either that they acted in concert, or that the act of the individual sought to be charged, ordinarily and naturally produced the acts of the others."

In *Wall* v. *Osborn*, 12 Wend. 39, the same principle is recognized, and the doctrine affirmed that one who does an unlawful act is considered as the doer of all that follows, and the prime mover of the damages that result, and accordingly it was there held, that where a party sold a mill standing upon the lot of his neighbor, and appointed a day for the purchaser to take it away, promising to aid him in its removal if assistance was necessary, and the mill was subsequently taken down and removed by the purchaser, that the vendor was liable to an action of trespass, although there was no proof of his being present or aiding in the removal of the building. " By the act of selling the plaintiffs' property," remarks SAVAGE, C. J., " the defendant assumed a control over it, and by appointing the time for the removal of the mill he virtually directed the purchaser to take it away."

So in *Morgan* v. *Varick*, 8 Wend. 594, the defendant sold

the plaintiffs' steam engine and requested the purchaser to take it away, and he was held liable in trespass, the court there holding that any unwarrantable and unauthorized interference with the property of another will constitute the party a trespasser. And it has been held that if one sell timber upon the land of another, and the purchaser cut and remove it, the seller is a trespasser. *Dreyer* v. *Ming*, 23 Miss. 434.

The party is held liable in such cases on the principle that he who does an act by another does it himself; it may not be the work of his hands, yet it is the result of his will and his purposes which are the efficient cause of the operations conducted by others. The case of *Scott* v. *Shepard*, 2 W. Black. 892, where the defendant started the lighted squib, and it was thrown into a market house where a large concourse of people had assembled, is a strong instance of the responsibility of an individual who was the first, though not the immediate, agency in producing an injury. Another instance is the case of *Guille* v. *Swan*, *supra*, where the defendant ascended in a balloon which descended a short distance from the place of ascent into the plaintiff's garden, and the defendant calling for help, a crowd of people broke through the fences into the plaintiff's garden beating and treading down his vegetables and flowers; it was held that inasmuch as the act of the defendant would ordinarily and naturally draw the crowd into the garden, he was answerable in trespass for all the damage done to the garden.

In the case now before us the defendants without right or authority assumed dominion and control over property belonging to the plaintiff. They authorized the cutting and removal of the timber and bark from the public lots, which they had no right to do. The fact that they supposed they had such right renders them none the less trespassers. As was said by SPENCER, C. J., in *Guille* v. *Swan*, *supra*: "The intent with which an act is done, is by no means the test of the liability of a party to an action of trespass." To be sure the permits were not such as could lawfully be given under the statute in relation to timber upon public lots, inasmuch as the right to grant permits

lies with the land agent and with no one else. Nevertheless they may be effectual for the purpose of establishing the defendants' liability in authorizing the commission of those wrongful acts which are the basis of this suit. Nor do they alone serve in rendering the defendants liable as authorizing the trespasses, but the defendants in giving these permits must be held to have ordinarily and naturally produced the acts which constitute the alleged trespasses — the cutting and removal of the timber and bark from the lots.

In *Herring* v. *Hoppock*, 15 N. Y. 413, a bond of indemnity had been given to the officer, and the question was whether the defendant, by giving the bond of indemnity, had rendered himself liable in trespass for the acts of the officer; and it was there held that the giving of the indemnity naturally produced the act of the wrongful sale of the property by the officer, and must be regarded as the principal if not the sole cause of it.

Also in *Lovejoy* v. *Murray*, 3 Wall. 1, the court held that in the giving of a bond of indemnity whereby the officer was induced to hold property not subject to attachment made the party a joint trespasser with the officer as to all that was done with the property afterwards.

The permits in this case were in effect not mere licenses, but were executory contracts for the sale of the timber and bark therein named, with permission to enter and remove the same. *Banton* v. *Shorey*, 77 Maine, 51. Such undoubtedly was the understanding of the defendants, as well as of those to whom they were given, and who are termed "grantees." The defendants received from the permittees pay for their services in exploring the lots before the permits were given; and Smith, one of the defendants, was scaler during all the lumbering operations.

This case is unlike *Robinson* v. *Vaughton*, 8 C. & P. 252, (34 E. C. L. 376) cited by the counsel for the defendants. In that case, which was trespass for breaking and entering the plaintiff's close with a gun and pointer in pursuit of game, there was no such dominion over the property and unauthorized acts of ownership as in this case, and yet the court there say that if

one party authorized and ordered the other to go upon the premises, they would be joint trespassers.

Numerous cases are cited by the learned counsel for the defendants to the effect, as he claims, that they cannot be held responsible for the acts of those who cut and removed the timber, inasmuch as those parties sustained the relation of contractors rather than that of servants or agents of these defendants. Undoubtedly that position might be tenable in a case where the defendants were sought to be held for the negligence of such persons in the performance of a legal act. Such is the doctrine of the cases cited. And the case of *Eaton* v. *E. & N. A. R. R. Co.* 59 Maine, 520, to which our attention has been particularly called, recognizes the distinction, in this class of cases, between the performance of a legal and an illegal act, holding, in accordance with the authorities, that in the execution of a wrongful or illegal act, the employer is not exempt from liability but is responsible for the wrong done by the contractor or his servants. In that opinion APPLETON, C. J., says : "Though a person employing a contractor is not responsible for the negligence or misconduct of the contractor or his servants in executing the act, yet if the act is wrongful, the employer is responsible for the wrong so done by the contractor or his servants, and is liable to third persons for damages sustained by such wrong doing. *Ellis* v. *Sheffield Gas Consumer Co.* 75 E. C. L. 767. So if, in the present case, the contract was to do a wrongful act, the defendants must be held liable for damages occasioned thereby. Or, if the defendant's engineer directed the contractors to do what was illegal and unauthorized, as by working outside of the limits of the true location, the defendants must be held liable for any trespasses thus committed."

So one who directs or authorizes a trespass to be done is liable. *Bacheller* v. *Pinkham*, 68 Maine, 255.

"The general rule is, that in actions of tort all persons concerned in the wrong are liable to be charged as principals." TINDAL, C. J., *Cranch* v. *White*, 1 Bing. N. C. 414 (27 E. C. L. 440) ; *Cram* v. *Thissell*, 35 Maine, 88.

The defendants in this case, whatever may be their legal relation to the parties actually cutting and removing the timber, must be considered as having authorized those wrongful and illegal acts which were but the natural and ordinary consequences of their own wrong doings.

Inasmuch as we have stated the grounds upon which the defendants have rendered themselves liable in this action, it is unnecessary to consider in detail all the objections set up in defence.

Therefore the only remaining question is that in relation to damages. By the terms of the report, that is to be only the current market value of the stumpage, which is admitted to be two thousand eight hundred and thirty-seven dollars, for the timber and bark; and to which sum, as by the report, is to be added the sum of two hundred ninety-seven dollars and seventeen cents as interest, making in all three thousand one hundred thirty-four dollars and seventeen cents.

*Judgment for the plaintiff for $3,134.17.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN, LIBBEY, EMERY and HASKELL, JJ., concurred.