MASSACHUSETTS BAY
INSURANCE CO.

v.

FERRAIOLO
CONSTRUCTION CO., INC.

Supreme Judicial Court of Maine.

Argued Oct. 31, 1990.

Decided Dec. 14, 1990.

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

Frederick M. Newcomb, III (orally), Rockland, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Ferraiolo Construction Co., Inc. ("Ferraiolo") appeals from a summary judgment in the Superior Court (Cumberland County, *Fritzsche, J.*) in which it is declared that Ferraiolo's comprehensive general liability insurer, Massachusetts Bay Insurance Company, has no duty to defend nor indemnify Ferraiolo from certain claims ("the Coffey suit") brought against it by William Coffey and others.[1] Because the Superior Court erred in its application of the law, we vacate the judgment.

The plaintiffs in the Coffey suit, which is still pending, allege that Ferraiolo operated its gravel pit in the town of Washington in such a fashion as to trespass upon their land. They seek damages both for common-law trespass and for violation of 14 M.R.S.A. § 7552 (injury to lands or property). Ferraiolo tendered the Coffey suit to the insurance company and requested it to defend. The insurance company declined to do so and filed this action seeking a declaratory judgment that it had no duty to defend the Coffey suit, nor to indemnify Ferraiolo for any liability incurred in the suit.

Construing the policy coverage in light of the distinction between "occurrence of harm risk" and "business risk" that we adopted in *Peerless Insurance Co. v. Brennon,* 564 A.2d 383 (Me.1989), the Superior Court held that Ferraiolo sought coverage for a "business risk" not covered by the policy. The court also decided that the alleged trespass, even if based merely on "mistake or error as to the ownership of the property," would not be an "occurrence" covered by the policy. The court therefore granted summary judgment for the insurance company. The court did not reach the insurance company's additional contention that the property was excluded from coverage because it was either property "occupied by ... the insured" or "property, not on premises owned by or rented to the insured ... upon which operations are being performed by ... the insured." Ferraiolo now appeals.

I.

■ The language of liability insurance policies is standardized throughout the insurance industry. *See Patrons–Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888, 890 (Me.1981); *Weedo v. Stone–E–Brick,* 81 N.J. 233, 405 A.2d 788, 790 (1979). The insured can negotiate only particular standard riders or exclusions. *See* R. Keeton, *Basic Text on Insurance Law* (1971), §§ 2.10, 2.11 at 68–87. Accordingly, a liability insurance policy must be construed so as to resolve all ambiguities in favor of coverage. "[A] standard policy of insurance ... being the crafty product of insurers who made the policy, selected its language and ordained its particular structure, should be interpreted most strongly against the insurer." *Baybutt Construction Corp. v. Commercial Union Insurance Co.,* 455 A.2d 914, 921 (Me.1983).

■ The insurer's duty to defend the insured against third-party claims is determined by comparing the insurance policy against the complaint. If the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend the suit. Any ambiguity must be resolved in favor of a duty to defend. *See Union Mutual Fire Insurance Co. v. Inhabitants of Town of Topsham,* 441 A.2d 1012, 1015 (Me.1982).

---

1. William Coffey, James Coffey, Albert Mortali, Susan M. Morang, and Vincent Mecca, plaintiffs in the Coffey suit, were named as parties in interest in the declaratory judgment action in the Superior Court, but are not parties to this appeal.

In *Peerless*, we discussed the distinction between an "occurrence of harm risk" and a "business risk" as it affects the scope of coverage of a comprehensive general liability insurance policy. 564 A.2d at 386. *See also* Note, *Baybutt Construction Corp. v. Commercial Union Insurance Co.: A Question of Ambiguity in Comprehensive General Liability Insurance Policies*, 36 Me.L.Rev. 179, 182 (1984). Comprehensive general liability insurance is intended to cover occurrence of harm risks, but not business risks. Business risks are excluded from the scope of coverage by detailed exclusion provisions.

■■ In general, occurrence of harm risks are those involving harm to others due to faulty work or products, while business risks are those involving business expenses incurred by the insured for repair or replacement of unsatisfactory work. *See Peerless*, 564 A.2d at 386 (quoting *Baybutt*, 455 A.2d at 923 (Wathen, J., dissenting)). In *Peerless* and *Baybutt*, the dispute focused on the interpretation of exclusion paragraphs (a), (n), and (o) of the standard policy, those being the exclusions for liability based on the contractor's warranty for its work. *Peerless*, 564 A.2d at 385. Overruling *Baybutt*, we held in *Peerless* that those exclusions do not contain an ambiguity giving rise to an insurer's duty to defend. *Id.* at 387.

Unlike *Peerless* and *Baybutt*, where the contractor incurred expenses due to unsatisfactory work, this case does not involve a contractor's warranty liability. The distinction between occurrence of harm risks and business risks is not a broad philosophical distinction in construing liability insurance coverage; it relates to the meaning of certain standard business risk exclusions that are not at issue in this case. Because there is no issue in this case about the standard exclusion paragraphs for business risk, the court's reliance on *Peerless* was error. The *Peerless* test does not apply.[2] We therefore vacate the summary judgment.

## II.

■■ The policy covers "all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this policy applies, caused by an occurrence...." An "occurrence" is defined as "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The Superior Court held that the alleged trespass could not be an "occurrence."

We have not previously been called on to decide this issue. Although other jurisdictions are divided on whether "property damage neither expected nor intended from the standpoint of the insured" includes property damage from intentional acts performed under a mistake as to ownership, we find particularly persuasive the reasoning of the Louisiana Supreme Court in *Gray v. State, through Department of Highways*, 191 So.2d 802 (La.1966). *Gray* involved a trespass taking of road fill by a contractor who had been wrongly instructed by the Department of Highways to remove it from an area the Department had not lawfully expropriated. Holding the contractor covered by liability insurance, the court stated:

> The real basis for determining whether an illegal removal of dirt is an "accident" within the meaning of the policy should be by ascertaining the intention of the parties. By a comprehensive general liability policy, a contractor seeks protection against the almost infinite ways in which he might unintentionally (i.e., by accident) be held liable in the operation of his business. The policy should afford protection against liability which, as here, arises out of the conduct of the contractor which he undertakes without actually knowing or expecting that he

**2.** We are not persuaded by the insurance company's suggestion that the trespass complained of in the Coffey suit should be treated as a "business risk" because Ferraiolo derived an economic benefit from its gravel pit operation.

Such a rule would exclude from coverage a multitude of commercial activities, rendering liability insurance largely illusory for any business.

will be held liable for damages as a result.

191 So.2d at 816. *See also N.W. Electric Power Cooperative, Inc. v. American Motorists Insurance Co.,* 451 S.W.2d 356 (Mo. App.1969). We conclude that the Superior Court erred in its application of the comparison test in holding that the acts complained of in the Coffey suit could not under any circumstances be an "occurrence." [3]

### III.

 The Superior Court declined to address the effect of the policy exclusion for property "occupied by ... the insured" or "that particular part of any property, not on premises owned by or rented to the insured, ... upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations...." We dispose of this remaining issue in the interest of judicial economy. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.4a at 438 (2d ed. Supp.1981). The exclusion is clearly not applicable to this case. Its purpose is to prevent liability insurance from operating as casualty insurance for damage to the insured's own property. We read it to exclude from coverage only damage to property lawfully occupied by the insured.

We conclude that the insurance company is obligated to defend Ferraiolo in the Coffey suit, and is liable to Ferraiolo for Ferraiolo's costs incurred to date in defending itself in that suit. Our conclusion, of course, is limited to the insurance company's duty to defend Ferraiolo against the Coffey suit. We express no opinion whether it might ultimately have a duty to indemnify Ferraiolo.

The entry is:

Judgment vacated.

3. Entry under a mistaken claim of right, even in good faith, is no defense to trespass. *E.g., State v. Smith,* 78 Me. 260, 4 A. 412 (1886); *Hatch v. Donnell,* 74 Me. 163 (1882); *Hobart v. Haggett,* 12 Me. 67 (1835). At least the common-law trespass count of the Coffey suit thus could be based on mistake, inadvertence, or negligence by Ferraiolo.

Remanded to the Superior Court with instructions to enter a judgment declaring Massachusetts Bay Insurance Co. has a duty to defend.

All concurring.

We express no opinion as to Ferraiolo's suggestion, made at oral argument, that the Coffey complaint might be read to state a claim for withdrawal of lateral support, which Ferraiolo contends would be covered under the policy.