Briggs v. SSA                          CV-02-421-JD  07/23/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Verle A. Briggs

    v.                                  Civil No. 02-421-JD
                                        Opinion No. 2003 DNH 128
Jo Anne Barnhart, Commissioner
Social Security Administration

O R D E R


    The plaintiff, Verle A. Briggs, seeks judicial review,

pursuant to 28 U.S.C. § 405(g), of the decision of the

Commissioner denying her application for social security

benefits.  Briggs contends that the Administrative Law Judge

("ALJ") failed to properly consider her subjective complaints of

pain and that the record lacks substantial evidence to support

the decision.  The Commissioner moves to affirm the decision.


Background

    Verle Briggs applied for social security disability

benefits, alleging a disability since March 12, 1997, due to

residual bursitis of the right shoulder, residual bilateral

carpal tunnel syndrome, and adhesive capsulitis of the right

shoulder.  While she worked as an inspector of golf equipment,

Briggs developed upper thoracic pain when she lifted her arms

above her head and pain in her right shoulder.  On March 12,

1997, during work, she experienced burning in her shoulders, with

radiating pain, causing numbness and tingling in both hands.

Upon examination, Dr. Spicer found point tenderness without evidence of root impingement.  Dr. Spicer diagnosed myofacial pain syndrome.  From April of 1997 through September of 1998, Briggs underwent occupational therapy at Weeks Memorial Hospital.  She had right carpal tunnel release surgery in July of 1997, which improved her motion and strength in her right wrist.

In November of 1997, Briggs's physician, Dr. Lon Howard, reported that Briggs had bilateral carpel tunnel syndrome, overuse syndrome, bursitis in both shoulders, and a probable rotator cuff tear.  Left carpal tunnel release was performed by Dr. Howard the same month.  Briggs's shoulder pain continued.  In April of 1998, Briggs underwent surgery to repair her right rotator cuff.  Although the post operative course was normal, Briggs continued to have decreased range of motion and pain.

Briggs was referred to Dr. O'Connor in October of 1998.  Dr. O'Connor diagnosed significant adhesive capsulitis in the right shoulder.  He offered options of giving the condition time to work out or having an arthroscopic release.  He indicated that Briggs retained the capacity for sedentary work with the restriction of no repetitive use or reaching with her right arm.  She had the arthroscopic release done in January of 1999.  Dr. O'Connor reported that she was doing extremely well with a great

range of motion.  Briggs continued to complain of tingling and numbness in her hands.  She was referred for a work hardening program and a functional capacity evaluation.

A functional capacity evaluation was done on May 21, 1999, at Littleton Regional Rehabilitation.  Briggs complained of pain in her neck, both shoulders, and both wrists and hands.  The evaluators noted that her subjective complaints equaled her objective pain behaviors.  After the testing, Briggs reported that her hands became very swollen and she had increased pain and stiffness in her hands, neck, and shoulders.

The functional capacity evaluation showed that Briggs had extremely slow hand speed dexterity, below average grip strength, below average pinching ability, and limited lifting ability.  She could sit for forty minute intervals, stand for thirty minute intervals, and walk for twenty minute intervals.  She could perform "'work at a physical demand characteristic level of sedentary lifting 10 pounds or less infrequently, intermittent self-paced, no load, no more than 2 hours a day.'"  Jt. Factual Statement (quoting p. 259 of admin. record).  Dr. Howard agreed with the functional capacity results.

Dr. Fairley, a social security medical consultant, reviewed Briggs's medical records in April of 2000.  Based on his review, Dr. Fairley found that Briggs was not limited in her ability to

3

sit or stand but could lift and carry no more than ten pounds. He also found that she should avoid frequent reaching with her right arm and frequent tight grasping with her right hand.

A hearing was held on November 16, 2000. Briggs, who was represented by counsel, testified that although surgery helped her shoulder, she was still having trouble and that carpal tunnel surgery had relieved less than half of the symptoms in her wrists and hands. She said that her current problems were tingling in her wrists, pain and decreased range of motion in her shoulders, and pain in her shoulders and neck. She said that lifting her infant daughter cased pain in her hands, that lifting her arm to comb her hair was difficult, and that she could walk for twenty minutes, sit for thirty minutes, and drive for fifteen minutes at a time.

A vocational expert also testified. The ALJ provided a hypothetical of a claimant who was limited to sedentary work with a need to avoid overhead reaching with her right arm and to avoid frequent tight grasping with her right hand. The vocational expert concluded that such limitations would preclude Briggs's past work as a golf club inspector, housekeeper, cook/cashier, and machine operator. The vocational expert testified that the posed limitations would still allow work as a surveillance system monitor, in a security position, in an information clerk

4

position, as an electronic circuit board inspector, and as a receptionist.

The ALJ issued her decision on January 23, 2001. She found that Briggs's allegations as to her limitations based on pain were not entirely credible. She found that Briggs retained the residual functional capacity to lift and carry up to ten pounds but should avoid work that required frequent overhead reaching with her right arm and frequent tight grasping with her right hand. Based on the vocational expert's opinion, the ALJ determined that Briggs was able to perform jobs that existed in significant numbers in both the regional and national economies. As a result, the ALJ found that Briggs was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant

5

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Briggs's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1] At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Briggs contends that the ALJ did not properly evaluate her subjective complaints of pain, that the

---

[1]The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

(1) whether the claimant is engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents the claimant from performing past relevant work; and
(5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence in the record, and that the vocational expert's opinion, based on an unsupported hypothetical, does not provide substantial evidence that work exists that Briggs can perform.

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). Determining a Social Security applicant's RFC is an administrative decision that is the responsibility of the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making an RFC determination on behalf of the Commissioner, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources. 20 C.F.R. §§ 404.1545(a) & 404.1564; SSR 96-5P, 1996 WL 374183; Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000). The ALJ's RFC determination must provide a clear explanation for its evidentiary basis and reasons for rejecting medical source opinions. See SSR 96-5P; Fargnoli, 247 F.3d at 41; Clifford v. Apfel, 227 F.3d 863, 874 (7th Cir. 2000); Newton, 209 F.3d at 456; Goatcher v. HHS, 52 F.3d 288, 290

7

(10th Cir. 1995).

In this case, the ALJ made a RFC assessment that appears to be based on Dr. O'Connor's opinion in October of 1998.[2] That RFC is significantly different from the evaluation done by Littleton Regional Rehabilitation, which was adopted by Briggs's treating physician, Dr. Howard. While the ALJ stated that her capacity assessment was based in part on "the positive opinion regarding the claimant's work capacity received from her treating physicians," she did not explain why she ignored many of the limitations stated in the Littleton Regional Rehabilitation evaluation, adopted by Dr. Howard, and instead relied on Dr. O'Connor's earlier opinion.

As such, the ALJ did not provide a sufficiently clear evidentiary basis for her RFC in light of all of the pertinent medical evidence and opinion in the record. Importantly, a review of the Dictionary of Occupational Titles sections describing the positions suggested by the vocational expert indicates that the restrictions in the Littleton Regional Rehabilitation evaluation might preclude those positions. In addition, the ALJ did not address the two-hour limitation in the

_____

[2]Because the ALJ stated that she relied on the opinions of Briggs's treating physicians, she apparently did not consider Dr. Fairley's consultative review in April of 2000.

8

Littleton evaluation.  Because the ALJ failed to properly support her RFC assessment, the vocational expert's opinion, based on that RFC, does not provide substantial evidence to support the ALJ's conclusion that jobs exist that Briggs can perform.  <u>See</u> <u>Rose v. Shalala</u>, 34 F.3d 13, 19 (1st Cir. 1994); <u>Arocho v. Sec'y</u> <u>of Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982).  Therefore, the decision is reversed and remanded for clarification or other appropriate proceedings.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to reverse the decision of the Commissioner (document no. 9) is granted, and the case is remanded for clarification or other appropriate proceedings.  The Commissioner's motion to affirm (document no. 11) is denied.  This is a sentence four remand.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

July 23, 2003

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire

9