St. Onge v. SSA                    CV-96-187-B    08/20/97

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Elaine St. Onge

    v.                                   Civil No. 96-187-B

Shirley S. Chater,
Commissioner, Social Security
Administration



**O R D E R**


    Elaine St. Onge challenges a decision by the Commissioner of
the Social Security Administration denying her application for
disability benefits.  From 1990 to 1996, St. Onge was treated for
complaints related to myofascial pain diagnosed as fibromyalgia,
slight neurological deficits, and non-psychotic major depression.
She contends that the Administrative Law Judge's ("ALJ") deter-
iation that she was not disabled at step five of the sequential
analysis, is not supported by substantial evidence.  St. Onge
further asserts that the ALJ erred in rejecting the medical
opinion of her treating physician and erred in his determination
of St. Onge's credibility.  Because I find substantial evidence
in the record to support the Commissioner's decisions, I affirm.

## I.  BACKGROUND[1]

### A.  St. Onge's Medical History

Elaine St. Onge has experience in a number of jobs, having worked as a cook, a department store clerk, a telephone receptionist, and a laborer.  St. Onge was injured when she fell through a gap in a platform on April 18, 1990 while working as a laborer.  She was diagnosed with a contused right hip/pelvis and an abrasion of the right elbow, and was treated and released from the hospital after x-rays revealed no evidence of fracture.  Six months after her injury, St. Onge began physical therapy in which most of the initial tests were within normal limits, and she was unable to reproduce pain during her evaluation.  St. Onge stopped going to therapy after three visits, but subsequently treated with a chiropractor.  St. Onge returned to physical therapy in May 1991, and within a week the therapist noted that St. Onge was talkative, social, and reported no pain during a three and one-half hour therapy session.

St. Onge was referred to Dr. Parker A. Towle, a neurologist, on August 30, 1991.  Dr. Towle concluded in November 1991 that St. Onge had fibromyalgia syndrome[2] and depression.  St. Onge

---

[1]  Unless otherwise indicated, the facts are either undisputed or taken from the joint statement of material facts filed by the parties.

[2]  On December 5, 1994, Dr. Towle stated in response to a request from St. Onge's attorney that, "fibromyalgia it [sic] is a condition apparently precipitated by physical and emotional trauma characterized by multiple pains and trigger point tenderness over the entire body in shifting locations.  To date no etiologic or chemical pathology has been detected which, of

denied any depression related symptoms and refused Dr. Towle's offer to provide anti-depressant medication. By January 2, 1992, however, St. Onge reported to the Androscoggin Valley Mental Health Center, overwhelmed with depression and suicidal thoughts. A certified clinical social worker, Mr. Gilpin, examined her and St. Onge was diagnosed as suffering from major depression. Dr. Lemmons evaluated her on January 28, 1992, and reported that St. Onge was scheduled to take anti-depressant medication four times a day but that St. Onge was noncompliant with the evening medication. In addition, St. Onge told Dr. Lemmons that she was not interested in daily anti-depressant medication.

On February 26, 1992, Dr. Towle increased St. Onge's anti-depressant medication. Throughout March, April, and May of 1992, Gilpin noted that she appeared less depressed, her mood improved, her anxiety decreased, and her attitude was positive. Gilpin stated in May 1992 that there was a direct correlation between the depression and the original accident which had caused her hip and elbow injuries, and that St. Onge's depressive symptoms would be greatly, if not entirely, ameliorated if she were able to find gainful employment within her physical capacity to function.

On September 1, 1992, Dr. Towle wrote that St. Onge suffered from fibromyalgia syndrome, depression, and mild peripheral

---

course, does not necessarily admit that it does not exist. The treatments involve primarily encouragement of physical therapy and the use of antidepressant medication. . . .Depression and anxiety impact upon fibromyalgia and this entity in turn will aggravate them."

neuropathy due to vitamin deficiency. Dr. Towle, however, had no further plans for consultation and he was generally "pleased by her progress and self motivation." He saw St. Onge a number of times in 1993. His notes from September 1993 state that, "Elaine St. Onge returned in good spirits but continued with pain in the right hip and back if anything more severe but fortunately with less right arm and neck pain." By January of 1994, Dr. Towle concluded that St. Onge could not work because of constant pain and depression.

In October 1994, a doctor from Northern New Hampshire Mental Health and Developmental Services completed a mental functional capacity assessment form and diagnosed major depression and depressive symptoms. The doctor did not find any limitations in St. Onge's ability to make occupational, performance and personal-social adjustments at a job, but did recommend that St. Onge resume counseling.

**B.    St. Onge's Application for Benefits**

St. Onge filed an application for benefits on October 21, 1993, alleging an inability to work due to depression, as well as back, hip, groin, shoulder, neck, elbow, and leg pain. St. Onge's application was denied by the Social Security Administration and was denied again after a de novo hearing and reconsideration by the ALJ.

The ALJ found that the medical evidence established that St. Onge had severe fibromyalgia with paraspinal muscle spasm and myofascial pain syndrome and major depression, but that she had

-4-

no impairment or combination of impairments that either met or equaled one of the Commissioner's listed impairments. The ALJ further concluded that a significant number of jobs existed in the national economy that St. Onge could perform in spite of her limitations. Therefore, the ALJ concluded that St. Onge was not disabled under the Act.

The Appeals Council denied St. Onge's request for review, making the Commissioner's decision final. The Appeals Council considered additional evidence from a treating source and information regarding medication but concluded that no additional evidence warranted changing the ALJ's decision. St. Onge asks that I reverse and remand.

## II. STANDARD

Pursuant to 42 U.S.C.A. § 405(g) (West Supp. 1996), the court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing a Social Security decision, the factual findings of the Commissioner "shall be conclusive if supported by 'substantial evidence.'" Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)(1991)). Thus, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's]

conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Moreover, it is the Commissioner's responsibility to "determine issues of credibility and to draw inferences from the record evidence," and "the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Ortiz, 955 F.2d at 769. If the facts would allow different inferences, the court will affirm the Commissioner's choice unless the inference drawn is unsupported by the evidence. Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

## III. **DISCUSSION**

The Commissioner concluded that St. Onge was not disabled at step five of the sequential evaluation process as provided by 20 C.F.R. § 404.1520 (1996) because she retained the ability to perform a wide range of light exertional tasks. At step five, the Commissioner has the burden of showing that, despite the severity of claimant's impairments and inability to return to past relevant work, she retains the residual functional capacity to do alternative work in one or more occupations that exist in significant numbers in the region where the claimant lives or in the national economy. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991); Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (citing 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566(b)). The Commissioner must show that claimant's limitations do not prevent her from engaging

in substantial gainful work, but need not show that claimant could actually find a job. <u>Keating</u>, 848 F.2d at 276 ("[t]he standard is not employability, but capacity to do the job"). St. Onge argues that the ALJ (1) failed to meet the Commissioner's burden of proof at step five of the sequential evaluation process; (2) erred by rejecting the treating physician's medical opinion, and (3) erred in his credibility finding concerning St. Onge's testimony. I address each argument in turn.

## A.    <u>Step Five Burden of Proof</u>

The ALJ based his step five determination primarily on the testimony of a vocational rehabilitation expert (VE). The Commissioner can meet her burden of proof at step five by relying on the testimony of the VE, but in order for the VE's answers to the hypothetical questions posed to be adequate, "the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." <u>Arocho v. Secretary of Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982); <u>see also</u> <u>Rose v. Shalala</u>, 34 F.3d 13, 19 (1st Cir. 1994) (ALJ cannot rely on VE's testimony when hypothetical impermissibly omitted any mention of a significant functional limitation).

St. Onge argues that the ALJ failed to include all of her non-exertional impairments in his hypothetical questions to the VE. Specifically, St. Onge argues that the ALJ did not fully consider the limitations caused by her mental impairment. The November 14, 1994 hearing record at which the VE testified

indicates the following hypothetical question by the ALJ:

> ALJ: I'm going to ask you some hypothetical questions, Mr. Chipman, which will take into account a number of different factors (INAUDIBLE). In the questions that I ask you this afternoon, you're dealing with a potential worker who is a younger worker, currently 37 years of age, a potential worker who has a high school equivalency, and previous semiskilled work experience. If we're dealing with someone who, physically, is not going to be able to do heavy lifting, and specifically, if someone were limited to lifting and carrying a maximum of 20 pounds, with perhaps, more frequent or repetitive lifting less than that, maybe, in the ten pound range, and if we're dealing with someone who is certainly not going to be able to do any type of climbing of ladders and stooping and kneeling and crouching and crawling during the day, and certainly wouldn't be best suited to work in jobs where they had to extend their arms to reach above the shoulder level, perhaps, like in stocking shelves or if they were to regularly bend at the waist to pick objects up off the floor and put them up onto a table or a desk, such as we're sitting today, that kind of repetitive action, **and if we're dealing with someone, who in terms of the work environment, perhaps, would be best suited to work in a job where they didn't have to wait on people--on the public--they didn't have to deal with people in terms of answering phone calls, handling decisions, perhaps fast-paced type of work not being the ideal situation.**

(emphasis added).

The VE indicated that such a person could not return to her past work, but identified other jobs which could be performed.

St. Onge's mental residual functional capacity assessment completed in December 1993 and affirmed in April 1994 noted moderate limitations in a number of categories contained in the summary conclusions.[3] St. Onge argues that each of those

---

[3] St. Onge argues that some, if not all, of the moderate limitations should have been incorporated into the ALJ's hypotheticals. The moderate limitations included: (1) the ability to understand and remember detailed directions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to work in coordination with or proximity to others without being distracted by them; (5) the ability to complete a

moderate limitations should have been included in the hypotheticals, and that the question posed to the VE did not take into account St. Onge's impairment due to depression.  I disagree.  In addition to the summary conclusions on the form, the consulting doctor fills out a narrative section.  In this narrative, the doctor wrote, "Overall, she is able to understand, remember, and perform routine activities.  She is able to get along with others and accept supervision.  Due to pain and depression, her stress tolerance is lowered, she is irritable and work absenteeism is likely above average. Some difficulties with sustained concentration is (sic) noted.  She may benefit from an isolated workstation and low stress routines."  The ALJ's hypothetical accurately reflects the narrative descriptions of St. Onge's abilities and assessment according to the narrative portion of the mental residual functional capacity assessment.

In addition, the ALJ referenced in his decision St. Onge's October 12, 1994 mental assessment in which the doctor concluded that St. Onge demonstrated good attention and concentration.  This evaluation was completed about a month prior to the hearing in front of the ALJ.  This evaluation also required the doctor to rate St. Onge in a number of categories regarding ability to

normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) the ability to accept instructions and respond appropriately to criticism from supervisors; (7) the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (8) the ability to respond appropriately to changes in the work setting.

relate to co-workers, deal with the public, maintain attention, deal with work stresses, and other job-related criteria. St. Onge was rated as "Unlimited/Very Good" in every category except "maintain attention/concentration", in which she was rated "good", which correlates to a limited but satisfactory ability to function. The ALJ noted, "despite allegations of poor memory, limited concentration and depressed mood, recent evaluation of the claimant's medical condition has shown a more than satisfactory ability to function, with only a slight limitation in her concentration and short term memory." The ALJ's hypothetical appears to take account of the information contained in this more recent evaluation, as well as the other medical evidence. The ALJ's hypothetical accurately portrayed St. Onge's limitations and, if anything, was more conservative than her most recent evaluation. I therefore reject St. Onge's argument because I find substantial evidence in the record that the ALJ adequately characterized St. Onge's non-exertional limitations caused by depression in his hypothetical to the ALJ.

B.    **Rejection of the Physician's Medical Opinion**

St. Onge next argues that the ALJ erred by rejecting Dr. Towle's conclusion that St. Onge was totally disabled. Dr. Towle has treated St. Onge since August 1991, and has repeatedly opined that St. Onge is disabled. An ALJ, however, need not give controlling weight to a treating physician's opinion. Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); 20 C.F.R. § 404.1527(d)(2)(1997) (controlling weight

given to treating source's opinion when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.). If a treating physician's opinion is not given controlling weight, the ALJ is required to apply a number of factors and explain the reasons for his decision. See 20 C.F.R. § 404.1527(d)(1997). The ALJ considers the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the consistency of the opinion with other opinions, and whether the opinion is supported by medical signs and laboratory findings. Id.

In this case, the ALJ concluded that substantial evidence did not support Dr. Towle's opinion. First, he observed that Dr. Towle's own course of treatment belied his medical opinion. Second, the ALJ observed that Dr. Towle's evaluations were based solely on St. Onge's subjective complaints, which the ALJ found were not entirely credible. Finally, he observed that Dr. Towle's medical conclusions conflicted with the weight of the other medical evidence in the record, including the opinions of several other examining physicians as well as two consulting non-examining physicians[4] who completed or reviewed a Residual

---

[4] The estimations of non-examining physicians cannot alone provide substantial evidence. However, they may do so if supported by other medical evidence. See Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 431-32 (1st Cir. 1991).

Physical Functional Capacity Assessment ("RFC"). Since the ALJ and not the treating physician must determine whether St. Onge is disabled, and since substantial evidence in the record supports the ALJ's decision to place less weight on Dr. Towle's opinion, I reject St. Onge's argument that the ALJ erred in rejecting the treating physician's opinion.

## C. <u>Credibility Finding on Subjective Pain Complaints</u>

Finally, St. Onge disagrees with the ALJ's finding that her testimony regarding her pain was not entirely credible. Subjective pain complaints are evaluated in light of all of the evidence. 42 U.S.C.A. § 423(d)(5)(A)(Supp. 1997); 20 C.F.R. § 4041529(c)(4)(1997); <u>Avery v. Secretary of Health & Human Servs.</u>, 797 F.2d 19, 23 (1st Cir. 1986). In determining the weight to be given to allegations of pain, "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." <u>Dupuis v. Secretary of Health & Human Servs.</u>, 869 F.2d 622, 623 (1st Cir. 1989). When the claimant's reported symptoms of pain are significantly greater than the objective medical findings suggest, the ALJ must consider other relevant information to evaluate the claims. <u>Avery</u>, 797 F.2d at 23. The ALJ must inquire about the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the characteristics and effectiveness of any medication, treatments, or other measures the claimant is taking or has taken to relieve pain; and any other factors concerning the claimant's

functional limitations due to pain. 20 C.F.R. § 404.1529(c)(3) (1997); Avery, 797 F.2d at 23. If the ALJ has considered all relevant evidence of claimant's pain, including both objective medical findings and detailed descriptions of the effect of pain on claimant's daily activities, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); see also Gagnon v. Secretary of Health & Human Servs., 666 F.2d 662, 665 (1st Cir. 1981).

Here, the ALJ determined that St. Onge's complaints of disabling pain and depression were inconsistent with the medical evidence in the record. First, although the ALJ acknowledged that St. Onge experienced pain resulting from her condition, he found that the reports from more than one consulting physician questioned the degree of her subjective complaints. According to the ALJ, "[r]adiological, rheumatoid, sediment rate and clinical testing have repeatedly confirmed the absence of significant underlying medical problems. . . . In addition, physical therapy progress notes document measurable improvement in the claimant's level of functioning. . . . Such evidence directly contradicts the claimant's allegations of persistent and intense pain and fatigue."

Second, the ALJ noted that while St. Onge may well have a

condition which causes pain, and may suffer from depression, her activities undercut her testimony as to the severity of the problems. For example, St. Onge was non-compliant with taking medication, and failed to follow through on psychiatric treatment. The ALJ additionally found that while Dr. Towle credibly acknowledged continued mood difficulties, St. Onge had not participated in counseling since 1993. Finally, the ALJ indicated that the plaintiff's daily activities, which included some cooking, household chores, taking care of pets, and shopping, undercut her credibility regarding her testimony of her injuries.

Evaluating a claimant's credibility and resolving conflicts in the evidence is the ALJ's province. See Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). Granting the ALJ's credibility and evidentiary determinations the proper deference, I find sufficient substantial evidence in the record to sustain the ALJ's credibility finding of St. Onge's subjective pain complaints.

## IV. CONCLUSION

For the foregoing reasons, I deny St. Onge's motion to reverse and remand the Commissioner's decision (document no. 5) and grant the Commissioner's motion to affirm (document no. 7).

-14-

SO ORDERED.


                                        Paul Barbadoro
                                        United States District Judge

August 20, 1997

cc:   David L. Broderick, Esq.
      Raymond Kelly, Esq.