Slovak v. SSA                          CV-02-231-M    05/29/03
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Bonnie S. Slovak,
     Claimant

     v.                                  Civil No. 02-231-M
                                         Opinion No. 2003 DNH 092
Jo Anne B. Barnhart,
Commissioner, Social
Security Administration,
     Respondent


                          **O R D E R**


     Pursuant to 42 U.S.C. § 405(g), claimant, Bonnie S. Slovak,

moves to reverse the Commissioner's decision denying her

application for an earlier "onset date" for the disability that

entitles her to Social Security disability insurance benefits, or

DIB, under Title II of the Social Security Act ("the Act"), 42

U.S.C. § 423, and supplemental security income, or SSI, under

Title XVI, 42 U.S.C. § 1382.  Specifically, Slovak claims an

onset date of March 31, 1996, rather than the date determined by

the Commissioner, November 1, 1998.  The Commissioner, in turn,

moves for an order affirming her decision.  For the reasons given

below, the matter is remanded to the Administrative Law Judge

("ALJ") for further proceedings consistent with this opinion.

## Standard of Review

The standard of review applicable in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(c) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

The Commissioner's findings of fact must be supported by substantial evidence; "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v.

2

<u>Sullivan</u>, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing <u>Levine v. Gardner</u>, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Currier v. Sec'y of HEW</u>, 612 F.2d 594, 597 (1st Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 12), which is part of the court's record.

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).

All of the facts included in that statement are not reiterated here, but will be referred to as necessary.  Similarly, the court surveys only as much of this case's somewhat complicated procedural history as is necessary to frame and decide the issues raised in the appeal.

Slovak currently receives DIB and SSI benefits.  Both benefits are based upon a determination that she was disabled as of November 1, 1998.  Subsequent to being awarded benefits, and at the suggestion of the ALJ, Slovak asked to re-open the issue of onset, for the purpose of claiming that she was disabled as of March 31, 1996.  The ALJ held a hearing on the issue of onset which began on April 12, 2001, and resumed on October 16, 2001, at which time the ALJ heard testimony from vocational expert ("VE") Howard Steinberg.  At that hearing, the ALJ framed a hypothetical question for the VE in the following way:

> Q  . . . Well, then assume Ms. Slovak was a younger worker at the alleged onset date, which would have been 3/31/96.  At that time she would have been approximately 43 years of age.  She's currently 48. And she confirmed that she had a 12th grade education. And she has past work experience which you identified. And has, at that time, the residual functional capacity to perform light work. . . .  At any rate, she had a residual functional capacity at the alleged onset equal

[to] light work, but not a full range, she had limitations. And the limitations are caused by some impairments of the hands and the cervical and lumbar spine. And on exertional impairments, based on the fact that she had been diagnosed as having a bipolar disorder with . . . some limitations. And those limitations, altogether, are as follows, she must avoid, she could only occasionally climb, stoop, kneel, crouch and crawl. She had bilateral limitations with respect to her upper extremity. She was limited with respect to reaching in all directions, handling, gross manipulation, fingering, fine manipulation, feeling. She should avoid grasping[,] pulling and repetitive hand motions. Limitations, as I said, in all of those functions. She's not precluded from using them, she's just limited in her ability to do all those things.

A  Can I, can I stop you there?

Q  Yes.

A  I'm, I'm not sure that I have all of the upper extremity limitations. I have limited reaching, fingering, feeling, fine manipulation, avoid grasping –

Q  And repetitive hand motions.

A  Yes. Okay, that, that's what I have. Was there anything else?

Q  No. She would require, at that time, an isolated work section where she would only have occasional contact with supervisors and coworkers. She would require a job that had only simple one step instructions.

(Administrative Transcript (herinafter "Tr.") at 37-39.) In response to the foregoing hypothetical question, the VE opined that Slovak would not be able to perform her past relevant work.

5

(Tr. at 39.)  He also opined that there are no skilled jobs in the national economy to which she had transferable skills.  (Tr. at 39.)  The VE did, however, testify that there are unskilled jobs in the national economy which Slovak could perform:

> A  . . . There are three jobs that I can identify that would fit with this hypothetical question. . . . The jobs that I feel would be physically appropriate within the hypothetical that you've given me would be the job of security guard at a light level.  The numbers that I have for this job are approximately 185,000 in the national economy and approximately 650 in the state.  I'm doing the math on the fly, the job security guard at the sedentary level, approximately 70,000 in the national economy and approximately 200 in the state.  And the job of storage facility rental clerk, approximately 55,000 in the national economy and approximately 150 in the state.
>
> Q  A security job, light and sedentary, do they involve watching a monitor?
>
> A  They can, yes.
>
> Q  And in any of these jobs is, do they, in any of these jobs that you mentioned, do they require a significant use of the upper extremities?
>
> A  No.  The use of the upper extremities for gross and fine manipulation would be occasional.
>
> Q  By occasional you mean no more than one-third of the day?
>
> A  No more than one-third of the day.
>
> Q  . . . What's the source of your information?

A   The Dictionary of Occupational Titles, Fourth Edition Revised, 1991, U.S. Department of Labor and the Employment Statistics Quarterly, Second Quarter of 2001.  That is from United Statistical Publisher's, Kansas City, Kansas.

(Tr. at 39-40.)


In a decision dated January 25, 2002, the ALJ made the following findings:

3.    The medical evidence establishes that the claimant has severe bilateral carpal tunnel of the thumbs, degenerative joint disease of the cervical and lumbar spines and a bipolar disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.    Prior to November 1, 1998, the undersigned does not find the claimant's testimony to be credible regarding the severity of her subjective complaints nor their effect on her ability to perform substantial gainful activity.

5.    Prior to November 1, 1998, the claimant had the residual functional capacity to perform the physical exertional requirements of work except for work which required lifting and carrying more than 20 pounds occasionally or 10 pounds frequently or performing tasks that required more than occasional climbing, stooping, kneeling, crouching, crawling or frequent balancing.  She could not perform tasks that require grasping or pulling or tasks that require repetitive hand motions.  Additionally, the claimant was unable to

7

perform tasks that require handling or fingering. The claimant had difficulty interacting appropriately with supervisors and co-workers and was limited to performing simple, one-step instructions.

. . .

7. Prior to November 1, 1998, the claimant had the residual functional capacity to perform light work activity.

8. The claimant is 48 years old, which is defined as a "younger individual" (20 CFR 404.1563 and 416.963).

9. The claimant has a high school education (20 CFR 404.1564 and 416.964).

10. Section 404.1569 of Regulations No. 4 and Rule 202.21, Table No. 2, of Appendix 2, Subpart P, Regulations No. 4, directs a conclusion that, the claimant, considering her residual functional capacity, age, education and prior work experience, was not disabled prior to November 1, 1998.

(Tr. at 22-23.) Based upon the foregoing findings, the ALJ ruled as follows:

Therefore, using Rule 202.21 as a framework for decisionmaking, and relying upon the vocational expert's testimony, the undersigned finds that, during the period from March 31, 1996 through October 31, 1998, the claimant was capable of making a vocational adjustment to jobs existing in significant numbers in the national economy. Accordingly, the claimant was not disabled within the meaning of the Social Security Act and was not entitled to a period of disability or

8

> disability insurance benefits and not eligible to
> receive supplemental security income benefits, based on
> the applications she filed on November 4, 1997 and
> October 21, 1998.

(Tr. at 22.)


## Discussion

According to Slovak, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and also gave the VE a hypothetical question based on a different residual functional capacity ("RFC") than the RFC stated in his written findings; (2) based his decision on Rule 202.21 of the medical-vocational guidelines without giving her proper notice; (3) failed to base his step-five determination on substantial evidence; (4) made a credibility determination that was not supported by substantial evidence; and (5) failed to complete the required psychiatric review technique form.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached

9

retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether Slovak was disabled between March 31, 1996 and October 31, 1998.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a
> disability only if [her] physical or mental impairment
> or impairments are of such severity that [she] is not
> only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience,
> engage in any other kind of substantial gainful work

10

which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also

42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard

determining eligibility for SSI benefits).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 U.S.C. §§ 404.1520 (DIB) and 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

11

<u>Seavey v. Barnhard</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).


The claimant bears the burden of proving that she is

disabled. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). She

must do so by a preponderance of the evidence. <u>See</u> <u>Mandziej v.</u>

<u>Chater</u>, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing <u>Paone v.</u>

<u>Schweiker</u>, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step
> 4 to show that he or she is unable to do past work due
> to the significant limitation, the Commissioner then
> has the burden at Step 5 of coming forward with
> evidence of specific jobs in the national economy that
> the [claimant] can still perform. <u>Arocho v. Sec'y of</u>
> <u>Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir.
> 1982). If the [claimant's] limitations are exclusively
> exertional, then the Commissioner can meet her burden
> through the use of a chart contained in the Social
> Security regulations. 20 C.F.R. § 416.969; Medical-
> Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,
> App. 2, tables 1-3 (2001), cited in 20 C.F.R. §
> 416.969; <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983). "The
> Grid," as it is known, consists of a matrix of the
> [claimant's] exertional capacity, age, education, and
> work experience. If the facts of the [claimant's]
> situation fit within the Grid's categories, the Grid
> "directs a conclusion as to whether the individual is
> or is not disabled." 20 C.F.R. pt. 404, subpt. P, App.
> 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However,
> if the claimant has nonexertional limitations (such as
> mental, sensory, or skin impairments, or environmental
> restrictions such as an inability to tolerate dust, <u>id.</u>
> § 200(e)) that restrict his [or her] ability to perform

12

jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). <u>See also</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

<u>Seavey</u>, 276 F.3d at 5 (parallel citations omitted). Finally,

In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

<u>Mandziej</u>, 944 F. Supp. at 129 (citing <u>Avery v. Sec'y of HHS</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote v. Sec'y of HHS</u>, 690 F.2d 5, 6 (1st Cir. 1982)).

Here, the Commissioner agrees that Slovak met her step-four burden of proving that her disabilities prevent her from performing her past relevant work. Thus, the only question before the court is whether the Commissioner met her burden of producing evidence of other jobs in the national economy that Slovak is capable of performing. The court considers in turn

13

each of the five grounds for reversal and remand that claimant has raised.

I.   Reliance on VE Testimony that is Inconsistent with the DOT and Use of a Hypothetical Question that is Inconsistent with the ALJ's Findings of Fact

According to Slovak, the ALJ erred, at step five of the sequential evaluation, in two ways, by: (1) failing to ask the VE whether his testimony was consistent with the DOT; and (2) presenting the VE with a hypothetical question that contained limitations that were materially less restrictive than those listed in his findings of fact.

A.   Consistency of the VE's Testimony with the DOT

Slovak argues that the VE testified that the security guard and storage-facility rental clerk jobs require only occasional use of the upper extremities while the DOT states that both positions require frequent reaching and frequent handling, and that, contrary to the requirement of Social Security Ruling ("SSR") 00-9p, 2000 WL 1898704 (S.S.A.), the ALJ failed to identify that discrepancy and to elicit an explanation of it from the VE.  The discrepancy between the VE's testimony and the DOT

is significant because the ALJ specified, in his hypothetical question to the VE, that Slovak had a bilateral limitation on upper extremity use which reduced her abilities in reaching, handling, gross manipulation, fingering, and fine manipulation. The Commissioner contends, without mentioning SSR 00-4p, that: (1) the DOT job definitions are simply generic descriptions that are not binding on an ALJ; (2) the ALJ was entitled to credit the VE's testimony that some security guard and storage facility rental clerk jobs do not require frequent handling; and (3) even if the security guard job requires frequent reaching and handling, the surveillance systems monitor job, which roughly corresponds to the job of a security guard who only watches monitors, requires no reaching, handling, or fingering.

SSR 00-4p, on which Slovak relies, provides, in pertinent part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to

15

fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information.

. . .

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:

- Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704 at *2, *4.

16

According to the DOT, the security guard job requires frequent reaching and frequent handling, as does the storage-facility rental clerk position. Frequent, in this context, means from one-third to two-thirds of the time. The VE, however, testified that neither job required significant use of the upper extremities, stating that "use of the upper extremities for gross and fine manipulation would be occasional," which he further specified to mean less than one-third of the time. Plainly, the VE's testimony conflicts with the DOT. Because the ALJ did not inquire as to the existence of any such conflicts, he did not identify, and did not resolve, the conflict identified above. On that basis, the ALJ's decision must be reversed and the case remanded. On remand, the ALJ should resolve the conflict between the VE's testimony and the DOT, following the guidance of SSR 00-4p.

B.   Validity of the ALJ's Hypothetical Question

Slovak also points out that while the ALJ found she "was unable to perform tasks that require handling or fingering," his hypothetical question to the VE posited that she was able to perform "limited reaching, handling, gross manipulation,

17

fingering, fine manipulation, and feeling." That discrepancy is significant because the only jobs identified by the VE, security guard and storage facility rental clerk, both require frequent handling. The Commissioner counters that there is no discrepancy between the ALJ's findings and the residual functional capacity he posited in his hypothetical.

Slovak raises a valid point; the ALJ's hypothetical question contained a less-restrictive limitation on handling than the limitation stated in the his findings of fact. Accordingly, on remand, the ALJ should make sure that his findings and hypothetical questions include the same non-exertional limitations.

II.  Use of Rule 202.21 without Proper Notice

Slovak next argues that the ALJ denied her due process to the extent that he based his decision on Rule 202.21 (20 C.F.R. § 404, subpt. P, App. 2) of the medical-vocational guidelines. According to Slovak, the holding in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), combined with the existence of non-exertional impairments, required the ALJ to provide her with notice of his

18

intention to base his decision upon a medical-vocational "grid rule," because reliance upon a grid rule necessarily implies a finding that a claimant's non-exertional impairments do not significantly erode the base of available jobs. The Commissioner does not respond to Slovak's Rule 202.21 argument.

Even assuming, without deciding, that the First Circuit would adopt the rule described in <u>Sykes</u>, this case is not on all fours with <u>Sykes</u>. <u>Sykes</u> was a case in which "the ALJ did not consider any evidence in addition to the grids [of which Rule 202.21 is a part] in making his determination that there were jobs in the national economy that [the claimant] could perform." 228 F.3d at 265. The rule announced in <u>Sykes</u> is that

> the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion).

<u>Id.</u> at 261. Here, as Slovak herself acknowledges, the ALJ did consider evidence provided by a vocational expert. Thus, the key condition set out in <u>Sykes</u>, exclusive reliance on the medical-

19

vocational guidelines, is absent. Accordingly, the rule of Sykes does not require reversal and remand, and the court declines to extend that rule to cover the circumstances of this case, in which the ALJ referred to the medical-vocational guidelines but also relied upon the testimony of a vocational expert.

While it was not improper for the ALJ to rely, in part, on a grid rule, given the holding in Sykes, use of the grid may still prove problematic in this case. "The Grid is based on a claimant's exertional capacity and can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rose v. Shalala 34 F.3d 13, 19 (1st Cir. 1994) (citing Sherwin v. Sec'y of HHS, 685 F.2d 1, 2-3 (1st Cir. 1982)); see also Seavey, 276 F.3d at 6 (discussing use of the grid as a "framework to guide [the] decision"). Accordingly, before relying upon the grid, the ALJ will need to establish that Slovak's various non-exertional limitations do not significantly impair her ability to perform at the relevant exertional levels.

III. <u>Lack of Substantial Evidence to Support RFC Determination</u>

Slovak also contends that the ALJ's decision should be reversed because ALJ lacked substantial evidence for his decision and misapplied the step-five burden by basing his decision on his negative finding as to her credibility rather than on positive medical and vocational evidence. The Commissioner does not respond to claimant's argument. Because this case is being remanded on other grounds, and because further proceedings consistent with the instructions outlined above will very likely solve the problems identified in this section, there is no need for further discussion.

IV. <u>Lack of Substantial Evidence to Support Credibility Determination</u>

Slovak argues that the ALJ's negative assessment of her credibility (Tr. at 22) is not supported by any findings or explanation, making it impermissibly conclusory. In response, the Commissioner points to several statements about Slovak's treatment, in the body of the ALJ's decision. (Tr. at 21.) The ALJ's consideration of Slovak's credibility is sketchy at best, and would appear to fall short of the standard set out in SSR 96-7p. On remand, the ALJ should provide "specific reasons for

[any] finding on credibility, supported by the evidence in the case record, and [those findings] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 (S.S.R.) at *4.

V.    Failure to Complete the Required Psychiatric Review Technique Form

Finally, Slovak contends that the ALJ committed reversible error by failing to fill out a psychiatric review technique ("PRT") form after determining that she suffered from a significant mental problem, namely bipolar disorder. The Commissioner counters that the applicable regulations no longer require completion of the PRT form, and points to several of the ALJ's findings related to claimant's bipolar disorder. Slovak, in turn, concedes that the PRT is no longer required, but maintains that the ALJ failed to perform the evaluation of mental impairments required by 20 C.F.R. § 404.1520a. Without belaboring the point, the court agrees that the ALJ's decision does not conform to the analytical framework set out in §

22

404.1520a.  On remand, the ALJ should follow that framework in assessing Slovak's mental impairment.

## Conclusion

For the reasons given above, claimant's motion to reverse and remand (document no. 10) is granted in part and denied in part.  To the extent it seeks reversal of the Commissioner's decision denying her application for benefits, that motion is denied.  To the extent it seeks remand to the ALJ for further consideration, it is granted.  The Commissioner's motion for an order affirming the ALJ's decision (document no. 11) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 29, 2003

cc:  Francis M. Jackson, Esq.
     David L. Broderick, Esq.

23